UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SAMIL FLONTECH CO., LTD., )<br>Plaintiff, )<br>)<br>v. )<br>)<br>FM APPROVALS LLC, )<br>FM APPROVALS LIMITED, and )<br>FM APPROVALS EUROPE LIMITED, )<br>Defendants. )<br>) | C.A. No. 21-083-JJM-LDA |

ORDER

Before the Court is a contractual dispute between Samil Flontech Co., Ltd. ("Plaintiff" or "Samil") and FM Approvals LLC, FM Approvals Ltd., and FM Approvals Europe Limited (collectively "Defendants" or "FM Approvals"). Samil filed a Motion for Preliminary Injunction (ECF No. 3, 38) and FM Approvals filed a Motion to Dismiss (ECF No. 36).[1] As critical business interests are implicated, the parties urged an expeditious decision on the pending motions. The Court therefore issues this brief order containing the Court's rulings and reasoning.

I. BACKGROUND

Plaintiff is a South Korean manufacturer of specialized duct products for use in cleanrooms where semiconductors are made. Defendants provide third-party testing and certification of such duct products and the facilities where they are produced.

---

[1] The facts come from Plaintiff's Complaint (ECF No. 1) and the contractual agreement between the parties (ECF No. 1-5).

1

The parties entered into an agreement for Defendants' services in 2015, which was amended in 2020 ("Agreement"). Defendants subsequently tested and certified two of Plaintiff's "SUPERFLON" duct products and several of Plaintiff's associated factories where it manufactured the products. Under the Agreement, Plaintiff was required to place on all FM Approvals-certified products both Defendants' industry recognized diamond-shaped certification mark as well as a "unique identification mark (i.e., model or type number)." Moreover, Plaintiff also agreed to manufacture all FM Approvals-certified products "only at locations documented and audited by" Defendants. If Plaintiff violated the Agreement, Defendants had the right to withdraw their certification.

Boiled down to the essentials – one of Plaintiff's competitors tipped off Defendants that Plaintiff was not in compliance, alleging that Plaintiff had produced FM Approvals-certified product at an unauthorized manufacturing location (the "Mado" plant). Additionally, Defendants accuse Plaintiff of violating the Agreement by way of its labeling specifications. As a result, Defendants withdrew their certification for a period of two years.

Plaintiff filed this suit, alleging that Defendants' withdrawal was a material breach of the Agreement leading to breach of contract, tortious interference, unfair and deceptive trade practices, breach of the covenant of good faith and fair dealing, and unjust enrichment claims. Because of its view that the nature of the alleged breach is an urgent business matter, Plaintiff filed a Motion for Preliminary

Injunction. Defendants countered with a Motion to Dismiss. The Court first addresses Plaintiff's Motion for Preliminary Injunction.

## II. DISCUSSION

### A. Preliminary Injunction

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "In this circuit, proving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction." *Arborjet, Inc. v. Rainbow Treecare Scientific Advancements, Inc.*, 794 F.3d. 168, 173 (1st Cir. 2015) (citing *NewComm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)).

Plaintiff asks the Court for a preliminary injunction directing Defendants to restore their certification of Plaintiff's products, among other relief. A district court must assess "(1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest." *Shurtleff v. City of Bos.*, 928 F.3d 166, 171 (1st Cir. 2019). "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *NewComm Wireless Servs.*, 287 F.3d at 9.

#### 1. Breach of Contract

##### a. Admissions

Defendants point to emails between Plaintiff's president, Sungjung Lee, and FM Approvals officials as admissions of conduct that violated the Agreement. *See*

ECF No. 36-1 at 5-6, 8. Specifically, Mr. Lee wrote that certain duct manufacturing had occurred at the uncertified Mado plant. *Id.* Mr. Lee later emailed, "I am very ashamed and personally very sorry that FM approved products were produced in unauthorized factories." ECF No. 41 at 2. While such admissions from Mr. Lee indicate conduct likely not in conformance with the Agreement, Plaintiff asserts, among other things, that there was an inescapable language barrier at play and the e-mails lend themselves to multiple interpretations. *See* ECF No. 38 at 26. Though ill-equipped at this stage of the litigation to engage in line-by-line linguistic analysis, the Court recognizes the problematic nature of Mr. Lee's emails and expressions of contrition. It is unlikely that Defendants were in breach of the Agreement when they took Mr. Lee's repeated emails as confirmation of violative conduct and proceeded to withdraw FM Approvals' certification for a probationary two-year period.[2] As such, Plaintiff is not likely to succeed on the merits as to breach of contract.

    b.    *Labeling*

Even if Mr. Lee's emails are not construed as admissions because of a language barrier or context issue, Plaintiff is also unlikely to succeed on its claim due to the Agreement's parameters for product markings. Under the Agreement, Plaintiff was

---

[2] It is worth noting that in the Agreement's Definitions section, several definitions are provided as to what constitutes a "deficient" product; these definitions are followed by: "or (iv) in any other respect identified by FM Approvals in its sole discretion including, but not limited to, *Customer's non-compliance with any part of this Agreement.*" (emphasis added). ECF No. 1-5, ¶ 1. In paragraph 7, the Agreement states: "FM Approvals may withdraw or suspend Approval of any Deficient product or service at any time." *Id.*, ¶ 7. Of course, Plaintiff disputes that there was non-compliance and, thus, no "deficiency."

4

required to place on all FM Approvals-certified products both Defendants' diamond-shaped certification mark as well as a "unique identification mark (i.e., model or type number)." ECF No. 1-5, ¶ 5b. The rationale is obvious: consumers must be able to distinguish between products, understand what they are purchasing and receiving, and spot potentially significant differences in quality and standards. Here, Plaintiff acknowledges that it made what Plaintiff characterizes as "generic" product, uncertified by FM Approvals, and as such, the product is outside the scope of the Agreement. ECF No. 38 at 6-7.

The Agreement provides that an FM Approvals client "shall comply with [FM Approvals'] Certifications Marks Usage Guidelines, found on fmapprovals.com . . ." in its packaging and labeling practices. ECF No. 1-5, ¶ 5g. The Usage Guidelines require that "[a]ny *similar products* that are not marketed as FM Approved shall be *uniquely identified and distinctive* from the FM Approved Product(s)." (emphasis added). ECF No. 41-29 at 4. Plaintiff argues that the lack of FM Approvals' diamond mark, coupled with missing numbers used internally by Plaintiff and FM Approvals, satisfy the distinction between approved and unapproved product that the Agreement mandates. *See* ECF No. 48 at 2. Defendants counter that the SUPERFLON designation and the associated SUPERFLON insignia – which Plaintiff admits were on approved as well as unapproved goods – *is* the "unique identification mark," and its inclusion on both products violates the Agreement. ECF No. 49, ¶¶ 4-5, 7. The Court agrees with Defendants.

This Court repeatedly pressed Plaintiff to direct it to content that distinguished unapproved from approved product. Plaintiff's position that internal numbers (undecipherable in the marketplace and not used by Defendants in communicating product approvals to the outside world) constitute the "unique identification mark" does not hold water. Clarity comes via the known SUPERFLON brand. Plaintiff's use of SUPERFLON on unapproved product did away with any discernible distinction, posed the threat of marketplace confusion, and likely constituted a contractual violation. Accordingly, Plaintiff is not likely to succeed in its claim that Defendants breached the Agreement by temporarily withdrawing their certification.

> 2. *Breach of the Covenant of Good Faith and Fair Dealing and Violation of Mass. Gen. Laws Ch. 93A § 11*

The implied covenant of good faith and fair dealing prohibits one party from acting to interfere with the other party's ability to derive the benefits of a contract. *See Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 821 (Mass. 1991).[3] A lack of good faith "can be inferred from 'unreasonable[ness] under all the circumstances.'" *McAdams v. Massachusetts Mut. Life Ins. Co.*, 391 F.3d 287, 301 (1st Cir. 2004) (quoting *Nile v. Nile*, 734 N.E.2d 1153, 1160 (Mass. 2000)). Massachusetts courts have used "unreasonableness" as a guide. *McAdams*, 391 F.3d at 301.

---

[3] Section 16(e) of the Agreement states that it is governed by the laws of the Commonwealth of Massachusetts. ECF No. 1-5, ¶ 16(e).

6

A breach of the covenant "*may* constitute an unfair or deceptive act or practice for the purposes of G.L. c. 93A." *Massachusetts Emps. Ins. Exch. v. Propac-Mass, Inc.*, 648 N.E.2d 435, 438 (Mass. 1995) (emphasis added) (citing *Anthony's Pier Four*, 583 N.E.2d at 822)). "In determining whether a particular practice is unfair, courts examine '(1) whether the practice . . . is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen).'" *NExTT Sols., LLC v. XOS Techs., Inc.*, 113 F. Supp. 3d 450, 460 (D. Mass. 2015) (quoting *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009)).

Here, for all the reasons discussed *supra*, Plaintiff is unlikely to succeed in its contention that Defendants acted "unreasonably" in withdrawing FM Approvals' certification for a two-year probationary period. *See McAdams*, 391 F.3d at 301. Additionally, in light of the Agreement providing for complete termination in case of a breach – and the reality that Defendants elected a course of action that avoided outright disposal of the contract – Defendants' withdrawal was not "unreasonable." *See* ECF No. 1-5, ¶ 15. Defendants' fielding of a tip from one of Plaintiff's competitors (regardless of that competitor's motives), alleging violations of the Agreement that stood to undercut the legitimacy of Defendants' industry-recognized standards was neither "unreasonable" nor "unfair." *See McAdams*, 391 F.3d at 301; *NExTT Sols.*, 113 F. Supp. at 460. And if Defendants' conduct was not that, then it was certainly

not "immoral, unethical, oppressive, or unscrupulous."[4] *See id.* The Court finds that Plaintiff is not likely to succeed in its claim that Defendants violated the covenant of good faith and fair dealing or engaged in an unfair or deceptive trade practice under Mass. Gen. Laws ch. 93A § 11.

Because Plaintiff's claims against Defendants are not likely to succeed on the merits, the Court goes no further, and it DENIES Plaintiff's Motion for Preliminary Injunction. ECF No. 3, 38.

### B. Motion to Dismiss

Having decided that a preliminary injunction is not warranted, the Court proceeds to Defendants' Motion to Dismiss. Defendants seek dismissal of all counts: breach of contract, declaratory judgment, tortious interference, breach of the implied covenant of good faith and fair dealing, violation of Mass. Gen. Laws ch. 93A § 11, and unjust enrichment. The Court briefly addresses each in turn.

On a Rule 12(b)(6) motion to dismiss, a plaintiff must plead a "plausible entitlement to relief" to press on in an action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). A complaint must have sufficient factual allegations that plausibly state a claim upon which relief can be granted. This standard requires more than a

---

[4] Plaintiff also argues that because an internal FM Approvals flow chart – laying out steps FM Approvals should ideally follow in investigating possible product deficiencies – was not followed to the letter, FM Approvals exhibited bad faith. *See* ECF No. 38 at 15-16. Notwithstanding that the COVID-19 global pandemic made certain steps impracticable, the Court finds that the internal flow chart was not incorporated into the Agreement and the process it set forth was not a contractual right granted to Plaintiff.

8

recitation of elements and must allow a district court to draw a reasonable inference that a defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept the allegations as true and construe them in the light most favorable to the plaintiff.[5] *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009).

### 1. Breach of Contract (Count I)

Plaintiff asserts that it "fully and timely responded to all of" Defendants' inquiries pertaining to Plaintiff's manufacturing practices and that Plaintiff "made numerous requests for meaningful dialogue," which Defendants rejected. ECF No. 1, ¶¶ 50, 56. Plaintiff claims Defendants' "unjustifiab[le] cancelling Approval" of Plaintiff's products, refusal to reverse its decision, and Defendants' "subjecting" Plaintiff to a "two-year probationary period" ("a remedy not enumerated" in the Agreement) without affording Plaintiff an opportunity to be heard, constituted a material breach. *Id.,* ¶¶ 100-101.

Because it is plausible that Defendants lacked hard evidence of Plaintiff's breach and that Defendants did not afford Plaintiff sufficient opportunity to prove the absence of a breach, the Court finds it is similarly plausible that Defendants had no basis to withdraw its approvals. Thus, the Court DENIES Defendants' Motion to Dismiss Count I.

---

[5] In considering Defendants' Motion to Dismiss, the Court restricted its review to the allegations in Plaintiff's Complaint for the purpose of analyzing its claims. *See* ECF No. 1.

9

### 2. Declaratory Judgment (Count II)

Plaintiff pleads declaratory judgment as a claim, seeking "judgment in its favor" because of FM Approvals' alleged breach. Declaratory judgment is not a cause of action, but a remedy. The Court thus GRANTS Defendants' Motion to Dismiss Count II.

### 3. Tortious Interference (Count III)

Tortious interference with a contract requires that the plaintiff (1) had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions. *Weiler v. PortfolioScope, Inc.*, 12 N.E.3d 354, 363 (Mass. 2014). Similarly, tortious interference with advantageous relations requires that the plaintiff (1) had an advantageous relationship with a third party; (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by defendant's actions. *Blackstone v. Cashman*, 860 N.E.2d 7, 12-13 (Mass. 2007).

Here, there are simply no facts alleged plausibly showing that Defendants knowingly and intentionally induced a third party to break a contract or sever a business relationship with Plaintiff. Moreover, to show "improper" "motive or means" a plaintiff needs "proof of the defendant's 'actual malice,' which is a 'spiteful, malignant purpose, unrelated to the legitimate corporate interest.'" *Brewster*

*Wallcovering Co. v. Blue Mt. Wallcoverings, Inc.*, 864 N.E.2d 518, 608 (Mass. App. Ct. 2007) (quoting *Shea v. Emmanuel Coll.*, 682 N.E.2d 1348, 1351 (Mass. 1997)). There are similarly no facts plausibly showing that Defendants acted with any "actual malice" toward Plaintiff when Defendants decided to withdraw their product certification. Accordingly, the Court GRANTS Defendants' Motion to Dismiss Count III.

### 4. Breach of the Covenant of Good Faith and Fair Dealing (Count V) and Violation of Mass. Gen. Laws Ch. 93A § 11 (Count IV)

The Court incorporates its statement of law, *supra*, pertaining to breach of the implied covenant of good faith and fair dealing. In the realm of Mass. Gen. Laws ch. 93A § 11, Massachusetts courts have found that "'immoral, unethical, oppressive or unscrupulous conduct'" does not have to be of "'antiheroic proportions . . . but need only be within any recognized or established common law or statutory concept of unfairness.'" *Exhibit Source, Inc. v. Wells Ave. Bus. Ctr., LLC*, 114 N.E.3d 993, 998 (Mass. App. Ct. 2018) (quoting *VMark Software, Inc. v. EMC Corp.*, 642 N.E.2d 587 (Mass. App. Ct. 1994)).

Because it is plausibly alleged that Defendants did not adhere to their own protocols in confirming a violation of the Agreement and in providing a client the opportunity to prove the absence of a violation, it is similarly plausible that such conduct lacked good faith. *See* ECF No. 38 at 15-16. The Court therefore DENIES Defendants' Motion to Dismiss Count V and Count IV.

### 5. *Unjust Enrichment (Count VI)*

First Circuit and Massachusetts law preclude an unjust enrichment claim where a valid contract exists. *See, e.g., Brown v. United Airlines, Inc.*, 720 F.3d 60, 70-71 (1st Cir. 2013); *Metro Life Ins. Co. v. Cotter*, 984 N.E.2d 835, 849 (Mass. 2013). Because the Agreement was a valid contract, this count cannot proceed, and so the Court GRANTS Defendants' Motion to Dismiss Count VI.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Preliminary Injunction. ECF No. 3, 38. The Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss. ECF No. 36.

IT IS SO ORDERED.

s/John J. McConnell, Jr.
_____
John J. McConnell, Jr.
Chief Judge
United States District Court

July 9, 2021